IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| LINDSAY MOORE, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:10-CV-372-A |
| | § | |
| THE GOODYEAR TIRE & RUBBER | § | |
| COMPANY, ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion to remand filed by plaintiffs, Lindsay Moore, individually and as independent executrix of the Estate of Zachary Ray Moore, H.R. Moore, Jr., and Trena Moore. After having considered the motion, the responses of defendants, The Goodyear Tire & Rubber Company ("Goodyear"), Refugio Auto Repair ("Refugio), Able Tire Company, Ltd. ("Able"), Able Tire Southwest, LLC (also "Able"),[1] and Liberty Tire & Recycling, LLC ("Liberty"), other pertinent parts of the record in this action, and applicable legal authorities, the court has concluded that such motion should be denied.

---

[1] Although plaintiffs identify the two Able defendants as separate entities in the beginning part of their petition, Pet. at 2, ¶¶ 2.4 and 2.5, they use "Defendant Able" as an abbreviated reference for both of those entities. Consistent with the allegations of the petition, the court refers to the entities collectively as "Able."

# I.

## Procedural History

### A. Plaintiffs' Pleading[2]

This action was commenced August 12, 2009, in the District Court of Wise County, Texas, 271st Judicial District, with the filing by plaintiffs of their petition seeking recovery from defendants for damages allegedly suffered by plaintiffs by reason of the death of Zachary Ray Moore ("Zachary") in a one-vehicle truck accident. According to the petition, the front left tire of Zachary's 2001 White Freightliner delaminated, causing Zachary to lose control of the vehicle. He lost his life as a result of the ensuing collision.

Plaintiffs alleged that the tire was originally designed, manufactured, and placed into the stream of commerce by Goodyear; after years of use, the tire was obtained by Able and/or Liberty as part of a tire recycling operation; Able and/or Liberty then placed the tire back into the stream of commerce for resale to the public through Refugio; and, about three months before the accident Zachary purchased the tire from Refugio for use on his 2001 White Freightliner.

---

[2]Consistent with Texas state court practice, plaintiffs' pleading is called a "petition," the term by which it will be referred in this memorandum opinion.

Causes of action are alleged against Goodyear, Able, and Liberty on manufacturing and marketing defect theories; against Goodyear on design defect and negligence theories; against Refugio on theories of implied warranty of merchantability, implied warranty of fitness for particular purposes, and misrepresentation theories; and against Able, Liberty, and Refugio on theories of express warranty, liability under section 82.003(a) of the Texas Civil Practice and Remedies Code, and negligence.

B. Post-Filing State Court Activities

All defendants were served with process in the state court action in August 2009. Each defendant filed an answer to plaintiffs' petition in either August or September 2009.

There was discovery activity in the state court before the action was removed to this court. In October 2009 Goodyear filed an amended answer in state court. Apparently the state court held a scheduling conference on October 26, 2009. There were designations of, and motions to designate, responsible third parties.

C.  Notice of Removal

Goodyear removed the action to this court by filing a notice of removal on May 25, 2010. Able, Liberty, and Refugio joined in and consented to the removal. The removal was based on diversity jurisdiction. Consistent with the allegations of the petition, the notice alleged that all plaintiffs are citizens of Texas, Goodyear is an Ohio corporation with its principal place of business in Ohio, Refugio is a citizen of Texas with its principal place of business in Texas, Able is a citizen of Texas with its principal place of business in Texas, and Liberty is a Delaware corporation with its principal place of business in Pennsylvania. Goodyear alleged that Refugio, Able, and Liberty all were improperly and/or fraudulently joined as defendants, with the consequence that the states of citizenship of those defendants must be disregarded for the purpose of determining whether diversity jurisdiction exists. According to Goodyear:

> There is no reasonable possibility in this case that plaintiffs can establish liability against any of the improperly and/or fraudulently joined defendants based upon the pleadings and developed facts and [] these defendants have been joined solely for the purpose of defeating diversity jurisdiction removal.

Notice of Removal at 4.

In support of its contention that the notice was timely filed, Goodyear alleged that:

> This removal is timely filed, as 30 days has not elapsed since the defendants first received information that plaintiffs could not establish liability against the fraudulently joined defendants. In this regard, Defendants deposed Plaintiff Lindsay Moore on May 11, 2010 at which time she could not identify any non-diverse defendant as having sold or been in the stream of commerce for the tire in question. There is no reasonable basis for predicting that Plaintiffs can recover against any of the non-diverse parties.

Id. at 5.

C. The Motion to Remand

On June 24, 2010, plaintiffs filed their motion for remand of this action to the state court from which it was removed. Plaintiffs alleged that all of the defendants were properly joined, with the consequence that diversity jurisdiction does not exist, and that, in any event, the notice of removal was untimely. As to the latter, the plaintiffs alleged:

> Goodyear failed to timely remove this action because it waited more than 30 days from the date that it could have reasonably ascertained that the case was removable based on its flawed theory of improper joinder. Specifically, Refugio's discovery responses, its designation of responsible third parties, Able's discovery responses, and Refugio's deposition, all of which occurred more than 30 days before removal, clearly put Goodyear on notice about its flawed theory of improper joinder. By failing to remove within 30

5

days from any of these dates, Goodyear lost its right to removal, and the case must be remanded.

Mot. to Remand & Br. in Supp. at 4-5.

II.

Analysis

A. The Improper Joinder Question

1. Applicable Legal Principles

Section 1441(a) of title 28, United States Code, allows for removal to a federal district court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." For an action to be removable based on diversity of citizenship, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied. One of those prerequisites is that there be complete diversity of citizenship between the plaintiffs and the properly joined defendants. See Jernigan v. Ashland Oil Inc., 989 F.2d 812, 814 (5th Cir. 1993) (per curiam). In addition, a suit not arising under federal law is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b) (emphasis added).

The removing party can satisfy the diversity-of-citizenship requirement by a showing that the non-diverse defendants were not "properly joined." "[T]he burden on the removing party is to prove that the joinder of the in-state parties was improper--that is, to show that sham defendants were added to defeat jurisdiction." Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 575 (5th Cir. 2004) (en banc). One of the methods of establishing improper joinder is to show "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id. at 573. In Smallwood, the Fifth Circuit adopted the following phrasing of the required proof of improper joinder, rejecting all others:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Id. A mere theoretical possibility that the plaintiff might be able to recover against an in-state defendant will not preclude a finding of improper joinder. Id. at 573 n.9. See also Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007) ("[T]here must be a reasonable possibility of recovery, not merely a theoretical one." (emphasis added)).

7

Even if the plaintiff has alleged a cause of action against the non-diverse defendant, improper joinder may be established by "pierc[ing] the pleadings and conduct[ing] a summary inquiry." Smallwood, 385 F.3d at 573. The removing party may bring to the court's attention and the court may "consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." Campbell, 509 F.3d at 669. Such an inquiry is appropriate "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Smallwood, 385 F.3d at 573-74.

2. Evidentiary Basis for the Claim of Improper Joinder

The record contains summary-judgment-type evidence that affirmatively establishes that the non-diverse defendants, Refugio and Able, did not engage in the activity attributed to them in the complaint. If that evidence is accepted, there is no reasonable basis for predicting that plaintiffs might be able to recover against the in-state defendants.

The parties are in agreement that the tire that plaintiffs allege caused Zachary to lose his life was a Goodyear G159 size 275/70R 22.5 tire. Refugio's owner, Refugio Lopez ("R. Lopez"), testified on his oral deposition, taken before the removal, that

Refugio did not supply such a tire to Zachary. R. Lopez testified that he never supplied any Goodyear tires to Zachary, Goodyear Resp., App. at 221, 225,[3] and that the only medium truck tires he supplied to Zachary were five Michelin tires he had obtained to put on his dump truck, four of which were purchased by Zachary and one that was supplied to Zachary at no cost as a replacement for one of the purchased Michelins. Id. at 216-23. Zachary's wife, Lindsay, was with him when Zachary acquired the four Michelins from Refugio. Id. at 235. The four Michelin tires were installed by Refugio as replacement for Goodyear tires on the rear axle. Id. at 219. At that time, the front two tires on Zachary's freightliner were Goodyear. Id. About a month after Refugio installed the four Michelin tires on the rear wheels of Zachary's truck, R. Lopez was told that one of the rear tires he had sold Zachary was damaged. Id. at 220. R. Lopez arranged for his son, Marcos, to replace the damaged tire. Id. at 220-21. Marcos removed the damaged tire and replaced it with one of R. Lopez's remaining two Michelin tires. Id. at 221.

---

[3] R. Lopez testified that Refugio has never sold a 275/70R 22.5 G159 Goodyear tire. Goodyear Resp., App. at 214. He has that knowledge because he personally has seen every tire Refugio has sold. Id.

R. Lopez's deposition testimony was supplemented by his July 10, 2010, affidavit in which he confirmed that Refugio did not supply the Goodyear tire in question to Zachary:

> 13. I had known Zachary Ray Moore for several years before his death. In early 2009 he had contacted me about obtaining tires for him for his freightliner utility truck. I offered to let him look at the set of six Michelin tires I had for my dump truck and he decided to purchase four of those tires for his rear axle. He told me he was going to purchase two new tires for his front axle and that the he could get the new tires cheaper than I could order them for him. I could not balance the tires for Zachary Ray Moore and told him that he would need to have that done somewhere else. I suggested that he try Centramatic near Alvarado.
>
> 14. About a month after installing the four tires on rear wheel position of Zachary Ray Moore's truck I received a phone call from my son Marcos Lopez who told me that Zachary Ray Moore had returned to my shop with a damaged Michelin tire in the rear wheel position of his truck. Marcos advised me that he had looked at the tire and it had been damaged by a rock that had become wedged in between the dual rear tires. Marcos asked me if he should charge Zachary Ray Moore for replacing the damaged tire with the fifth Michelin tire from the original set of six tires and I told him not to charge Zachary Ray Moore. After replacing that Michelin tire on the rear of Moore's utility truck, I had one Michelin medium tire left which is the one that I offered to the men who claimed to be Zachary Ray Moore's friends.
>
> 15. At no time did I or anyone at Refugio Auto Repair ever sell Zachary Ray Moore a Goodyear G159 size 275/70R 22.5 tire. Further, at no time did I or anyone at Refugio Auto Repair ever install or mount any tires on the front wheel position of a freightliner truck for Zachary Ray Moore. The only medium tires Refugio Auto

Repair ever sold Zachary Ray Moore were the four
Michelin tires that were installed on the rear axle of
his freightliner truck. I have confirmed this by
asking each employee at Refugio Auto Repair if they
ever sold Zachary Ray Moore medium tires. Each
employee has advised me that they never sold any such
tire to Moore.

    16. Further, I have looked for a receipt or
record of sale for a Goodyear tire and in particular a
Goodyear G159 size 275/70R 22.5 tire evidencing sale of
such a tire to Zachary Ray Moore and have found none.

<u>Id.</u> at 335-36.

R. Lopez's deposition and affidavit testimony was supported by the testimony of his son, Marcos Lopez ("M. Lopez"), whose July 10, 2010, affidavit states, in pertinent part, as follows:

    1. My name is Marcos Lopez. I am a resident of
Johnson County and my father is the owner of Refugio
Auto Repair located at 2768 S Interstate 35 W,
Burleson, TX 76028. I worked for him at Refugio Auto
Repair from 2006 to 2009.

    2. In February or early March of 2009 I helped
my father install four medium Michelin truck tires on
the rear wheel positions of a freightliner utility
truck that I have since come to learn was owned by
Zachary Ray Moore. It was unusual because Refugio Auto
Repair does not normally sell or install any tires
other than passenger and light truck tires and as a
result I specifically remember installing the tires.

    3. The four Michelin tires that I helped install
on the utility truck were from a set of six tires that
my father had purchased for use on his dump truck.

    4. About a month after installing the four tires
on rear wheel position of Zachary Ray Moore's truck,
Mr. Moore returned to the shop because one of the four

Michelin tires had been damaged. Mr. Moore wanted us to replace the damaged tire with one of the two remaining Michelin tires from the original set.

    5. I called my father, Refugio Lopez and asked him if we should charge Zachary Moore for the new tire and he told me not to charge for the replacement tires. I looked at the damaged Michelin tire and saw that it bad been damaged by a rock that had become wedged in between the dual rear tires.

    6. I removed the damaged tire from the rear wheel position and replaced it with one of the two remaining Michelin tires from the original set of six tires.

    7. At no time did I ever sell Zachary Ray Moore a Goodyear G159 size 275/70R 22.5 tire. Further, at no time did I ever install or mount any tires on the front wheel position of a freightliner truck for Zachary Ray Moore. To the best of my knowledge the only medium tires Refugio Auto Repair ever sold Zachary Ray Moore were the four Michelin tires that were installed on the rear wheel positions of the freightliner utility truck.

Id. at 327-28.

Lindsay testified during her pre-removal deposition that she recalls going with her husband to Refugio's once, but that she did not know what kind of tires Zachary bought there or where the tires were mounted. Id. at 147-50. Thus, the only possible source of information disclosed by the record that might have rebutted the evidence provided by the Lopezes was unable to provide any rebuttal.

While the court questions whether the affidavit of Ross Linn ("Linn") submitted by plaintiffs should be considered, bearing in mind that plaintiffs failed to properly disclose Linn or the affidavit, the court is satisfied that nothing in the Linn affidavit contradicts the pertinent deposition and affidavit testimony of R. Lopez or the affidavit testimony of M. Lopez.

In addition, the record contains affidavit testimony that affirmatively establishes that neither Able nor Liberty supplied to Refugio a tire of the kind that allegedly failed. Liberty Resp., App. at 61-68, 159-61. Of course, if there is no proof that Zachary acquired the tire from Refugio, the claim of plaintiffs against Able that Able supplied the tire to Refugio would necessarily fail.

Though plaintiffs have had adequate opportunity to put in the record whatever evidence might be in existence that would establish that one or both the in-state defendants, Refugio and Able, were involved in supplying the tire in question to Zachary, the record contains no such evidence. On the other hand, there is record evidence that affirmatively establishes that neither of the in-state defendants was involved in supplying the tire in question or installing it on Zachary's vehicle.

For the reasons given above, the court has concluded that Refugio and Able were improperly joined as defendants. The record created by Goodyear shows "inability of the plaintiff[s] to establish a cause of action against the non-diverse part[ies] in state court." Smallwood, 385 F.3d at 573. Put another way, "there is no reasonable basis for [this] court to predict that the plaintiff[s] might be able to recover against an in-state defendant." Id. The court concludes that the citizenship of Refugio and Able should be disregarded in determining whether diversity jurisdiction exists. When so disregarded, the record establishes the existence of diversity jurisdiction.

B. The Timeliness Question

1. Applicable Legal Principles

Section 1446(b) of title 28 provides in pertinent part as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

Removability of the instant action could not be ascertained from the allegations of plaintiffs' petition. Instead, plaintiffs alleged facts that, if true, would have defeated diversity

14

jurisdiction. Thus, the thirty-day period for filing of a notice of removal started to run in the instant action after Goodyear had received a copy of an "other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

In <u>Bosky v. Kroger Texas, LP</u>, 288 F.3d 208, 211 (5th Cir. 2002), the Fifth Circuit had the following to say in reference to the use of the word "ascertained" in the statute:

> "Ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty." The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

<u>Id.</u> (footnote omitted). The Fifth Circuit, adopting a rule expressed by the Tenth Circuit in <u>DeBry v. TransAmerica Corp.</u>, 601 F.2d 480, 489 (10th Cir. 1979), stated the rule of the Fifth Circuit to be that:

> [T]he information supporting removal in a copy of an amended pleading, motion, order or other paper must be "unequivocally clear and certain" to start the time limit running for a notice of removal under the second paragraph of section 1446(b). This clearer threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line

rule should create a fairer environment for plaintiffs
and defendants.

Bosky, 288 F.3d at 211 (footnote omitted). Such a rule was thought by the Fifth Circuit to be desirable because:

> [A] defendant will be less likely to act on more equivocal information provided in "an amended pleading, motion, order or other paper" because such a "protective" removal is no longer necessary to avoid the risk of losing his right to removal by the lapse of time.

Id. at 212.

The Ninth Circuit, which appears to apply a rule similar to the Fifth Circuit's, and for the same reasons, noted the Rule 11 implications of a removal timeliness rule that would tend to precipitate action by removing counsel before counsel has learned with certainty that removal is proper. See Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 697 (9th Cir. 2005) ("[T]he pressure to file a premature notice of removal may lead to the imposition of Rule 11 sanctions.").

2. Facts Bearing on the Timeliness Issue

A transcript of deposition testimony is "other paper" within the meaning of § 1446(b). S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). Once R. Lopez's deposition was completed on April 23, 2010, Goodyear Resp., App. at 196, Goodyear had probative evidence indicating that Refugio had been

16

improperly joined as a defendant.  However, bearing in mind the requirement of Rule 11 of the Federal Rules of Civil Procedure that the presentation by a party and its attorney to the court of a pleading, motion, or other paper constitutes a certification "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support," Fed. R. Civ. P. 11(b), further inquiry was appropriate.

Considering the unqualified allegations of plaintiffs' pleading that Refugio supplied the tire in question, for Goodyear's counsel to be able to satisfy the "inquiry reasonable under the circumstances" requirement of Rule 11, they logically, for the sake of certainty, would want to put on the record the testimony of Zachary's wife, who R. Lopez said was present when Zachary purchased the four Michelin tires.  Until that occurred, the Bosky standard that the information supporting removal must be unequivocally clear and certain to start the running of the thirty-day deadline for removal would not have been satisfied. The requisite level of clarity and certainty was acquired upon the taking of Lindsay's deposition on May 11, 2010.  Goodyear Resp., App. at 130.  Once that deposition was taken, Goodyear and its counsel for the first time had the level of certainty that

17

set in motion the running of the thirty-day time limit. The notice of removal was filed less than thirty days later, on May 25, 2010. It, therefore, was timely filed.

The court is not persuaded by plaintiffs' contentions that the thirty-day time period started to run earlier because of discovery responses and motions to designate responsible third parties filed by Refugio, Able, and Liberty. While those documents disclosed contentions of Goodyear's co-defendants that they were not responsible for supplying the tire in question, those documents did not constitute evidence Goodyear could use against plaintiffs when advancing Goodyear's improper joinder theory in support of removal. Even if the documents filed by Goodyear's co-defendants served to put Goodyear on notice that it might be able to prove improper joinder, the level of required certainty was not obtained until the depositions of R. Lopez and Lindsay had been taken. Not until the depositions were taken did Goodyear possess evidentiary material admissible against plaintiffs that it could present in support of improper joinder.

C. Conclusion

For the reasons given above, the court concludes that Goodyear has satisfied its burden of proving that the in-state defendants were improperly joined for the purpose of defeating federal jurisdiction. And, the court is satisfied that the notice of removal was timely filed. Therefore, the court is denying the motion to remand. In addition, the court is <u>sua sponte</u> dismissing plaintiffs' claims and causes of action against Refugio and Able.

III.

Order

The court ORDERS that plaintiffs' motion to remand be, and is hereby, denied.

The court further ORDERS that plaintiffs' claims and causes of action against Refugio and Able be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissals.

SIGNED August 10, 2010.

_____
JOHN McBRYDE
United States District Judge