IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



LINDSAY MOORE, INDIVIDUALLY §
AND AS INDEPENDENT EXECUTRIX §
OF THE ESTATE OF ZACHARY RAY §
MOORE, ET AL., §
 §
    Plaintiffs, §
 §
VS. § NO. 4:10-CV-372-A
 §
THE GOODYEAR TIRE & RUBBER §
COMPANY, §
 §
    Defendant. §

## MEMORANDUM OPINION
### and
### ORDER

Before the court for decision is the motion for partial summary judgment filed by defendant, The Goodyear Tire & Rubber Company, ("Goodyear") on March 23, 2011. After having considered such motion, the response of plaintiffs thereto, Goodyear's reply, the other items that have been filed in the above-captioned action, and pertinent legal authorities, the court has concluded that such motion should be granted in part and denied in part.

I.

## Nature of the Action

By this action, plaintiffs, H. R. Moore, Jr., Trena Moore, and Lindsay Moore, individually and as independent executrix of the estate of Zachary Ray Moore, who are the survivors and the personal representative of the estate of Zachary Ray Moore ("Zachary"), sued Goodyear to recover damages allegedly resulting from the failure of a tire on a vehicle Zachary was operating that led to Zachary's loss of control of the vehicle, causing his death. Plaintiffs alleged that the tire was originally designed, manufactured, and placed into the stream of commerce by Goodyear several years prior to the accident. Causes of action are alleged by plaintiffs against Goodyear based on manufacturing, marketing, and design defect, breach of warranty, and negligence theories.

II.

## The Grounds of the Motion

Goodyear asserts in its motion that:

1. There is no evidence to support Plaintiffs' claim for malice and exemplary damages;

2. There is no evidence that Zachary Ray Moore experienced conscious pain and suffering;

3. There is no evidence that the absence of a nylon overlay is a design defect.

Mot. at 2. Goodyear seeks summary adjudications in its favor on plaintiffs' claims that Goodyear was guilty of malice and is subject to an award of exemplary damages in favor of plaintiffs; that Zachary experienced conscious pain and suffering for which the personal representative of his estate is entitled to make a recovery from Goodyear; and, that the failure of Goodyear to design the tire in question with a nylon overlay was a causative design defect.[1]

III.

Analysis

A. The Ground of the Motion as to Plaintiffs' Claim that Goodyear Was Guilty of Malice for Which Exemplary Damages Should be Awarded

Plaintiffs do not provide a response to the first ground of Goodyear's motion other than to state that plaintiffs do not oppose Goodyear's motion for summary judgment on punitive damages. Br. in Supp. of Resp. at 1 n.1 & 5. The court takes this concession, combined with plaintiffs' failure to make

---

[1]The "nylon overlay" design defect theory was not specifically alleged in plaintiffs' pleading, but became a part of plaintiffs' claims through a witness hired by plaintiffs as an expert by the name of Dennis Carlson, who opined for plaintiffs that absence of a nylon overlay in the design of the tire was a causative design defect. Resp., App. at 20-23.

3

further response on the subject, to be a concession that the first ground of Goodyear's motion should be granted. Therefore, the court is granting Goodyear's motion as to malice and exemplary damages by ruling that plaintiffs' claims that Goodyear was guilty of malice and that plaintiffs should recover exemplary damages from Goodyear are without merit and no longer will be issues in this case.

B.  The Conscious Pain and Suffering Ground of the Motion

The second ground of the motion is based on Texas case law[2] that only pain and suffering that is consciously experienced is compensable. See Casas v. Paradez, 267 S.W.3d 170, 185 (Tex. App.--San Antonio 2008, pet. denied); Southern Pac. Transp. Co. v. Luna, 730 S.W.2d 36, 38 (Tex. App.--Corpus Christi 1987, no writ); Russell v. Ramirez, 949 S.W.2d 480, 491 (Tex. App.--Houston [14th Dist.] 1997, no writ); Canales v. Bank of Cal., 316 S.W.2d 314, 317-18 (Tex. Civ. App.--Eastland 1958, writ ref'd n.r.e.). While the court's decision on this ground is a close call, the court has decided to deny the motion as to this ground on the assumption that the matter can be dealt with in the court's charge to the jury if there is no trial evidence that

---

[2] The occurrence in question happened in Texas, with the consequence that Texas substantive law governs.

4

Zachary had any conscious pain or suffering. The court is inclined to agree with plaintiffs that even if there is no evidence of physical pain and suffering, there undoubtedly will be circumstantial evidence that would support an award of mental anguish damages for whatever mental turmoil Zachary might have experienced from the time he lost control of the vehicle until it crashed.

C. The "Nylon Overlay" Design Defect Theory

The only evidence adduced by plaintiffs in support of their theory that absence of a nylon overlay in the design of the tire in question was a causative design defect are the opinions advanced by Dennis Carlson ("Carlson"), an engineer who plaintiffs have retained as an expert in this action. Carlson's opinions favorable to plaintiffs on this subject are found in his declaration, which is under tab D of plaintiffs' appendix to their brief in response to the motion. Br. in Supp. of Resp., App. at 20-23, ¶¶ 15-25. The parties seem to be in agreement that the merit of this third ground of the motion depends on the validity of Carlson's opinions. If plaintiffs are to satisfy their summary judgment burden, they must do so through the evidence provided by Carlson.

In deciding whether Carlson's opinions constitute probative summary judgment evidence that would raise a genuine issue of fact that absence of a nylon overlay was a causative design defect, the court has given significant attention to the Supreme Court decisions in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999),[3] which put meat on the bones of Rule 702 of the Federal Rules of Evidence.[4] While the substantive law of Texas is applicable to this case, the Federal Rules of Evidence control the admission of expert testimony. <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 459 (5th Cir. 2002). "The admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment." <u>First United Fin. Corp. v. U.S.F. & G. Co.</u>, 96 F.3d 135, 136-37 (5th Cir. 1996).

---

[3] In a sense, <u>Kumho</u> is particularly pertinent since Carlson was the witness whose opinion was at issue. In <u>Kumho</u>, the Court gave the following explanation of the issue confronting it: "The question was not the reliability of Carlson's methodology in general, but rather whether he could reliably determine the cause of failure of <u>the particular tire at issue</u>." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 139 (1999).

[4] The text of Rule 702 of the Federal Rules of Evidence is as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

All expert testimony is filtered through Rule 702. Mathis, 302 F.3d at 459. Whether a person is qualified to testify as an expert is a question of law. Id. "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." Id. at 459-60. When Daubert and Kumho are taken into account, "the party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable." Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). That "requires some objective, independent validation of the expert's methodology." Id. at 276. "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." Id. In the final analysis, the court is tasked in determining admissibility of expert opinion testimony with an evaluation of whether the relevance and reliability requirements of Rule 702, Daubert, and Kumho have been satisfied.

In the instant action, so far as the court can tell the only thing in the record bearing on whether absence of a nylon overlay in the tire was causative is Carlson's own ipse dixit that it was. Resp., App. at 22-23, ¶¶ 23 & 25. There is no summary judgment evidence that would provide the element of reliability

to Carlson's bare conclusions that "the absence of a nylon overlay was a producing cause of the tread separation in the accident that occurred on May 28, 2009, and the loss of control of the vehicle in question resulting in the accident," and his opinion that "based upon reasonable engineering probability, that this design defect (the absence of a nylon overlay) was a producing cause of the accident that resulted in the death of Zachary Moore on May 28, 2009." Id. at 23.

Moreover, Carlson admitted in his deposition that absence of such a nylon overlay is not a design defect *per se*, and that there have been many successful tires that have not had the overlays. Mot., App. at 130. Carlson made a similar admission when giving his deposition in a case pending in the United States District Court for the District of Connecticut in March 2006. Mot., App. at 146 (dep. pp. 143-44). The court notes that in that testimony Carlson said that "if you do have a separation, it will certainly stop it from growing and delay it a great number of miles." Id. (dep. p. 144). There is no indication that Carlson has done, or is acquainted with, any testing to evaluate how much delay, if any, might be expected with or without a nylon overlay. In March 2010 Carlson testified in a deposition he gave in a case pending in a Florida state court that he does not know

of any manufacturer in this country that uses the nylon overlay in medium truck tires. Mot. to Exclude Test. of Carlson, App. at 78.

The explanations Carlson gave for his opinions that the absence of a nylon overlay caused the tire to be defective and to fail do not include anything that would cause the court to believe that his opinions are reliable in a <u>Daubert</u> or <u>Kumho</u> sense. His mere assurances that absence of a nylon overlay was a causative design defect is not enough. Plaintiffs have failed to persuade the court that Carlson's opinions are based on sound science having some objective, independent validation in an acceptable methodology. The bases for his opinion on this subject are summed up in five paragraphs of his declaration, as follows:

> 15. Nylon overlays, or cap plies, were first incorporated in a Pirelli tire used as original equipment on a Fiat 2.4L Dino in the late 1960s. They quickly became ubiquitous on performance vehicles, European vehicles and non U.S. tires. They have been used by nearly every manufacturer on nearly every type of tire. Today, they are used on approximately 50% of U.S. light truck tires, almost all non U.S. passenger and light truck tires and, tellingly, on all run flat tires. There have been several medium truck tires including a Goodyear tire which use either nylon or steel to reinforce the shoulders. Goodyear has used this construction in a European heavy truck tire for many years.

16. There is ample evidence that nylon overlays prevent tread-belt separations. Firestone proposed nylon overlay versions of its ATX and Wilderness AT tires to prevent separations shortly before the tires were first recalled in 2000. During the recalls and subsequent litigation, Firestone produced a list of hundreds of its tire designs that used nylon overlays, many of which were not high speed or heavy tread and belt tires (Exhibit 2).

17. Goodyear used nylon overlays to control its tread-belt separation problem that surfaced in 1995 in its light truck tires. That same year, a Goodyear design for a medium truck tire with a nylon overlay was patented which plainly states:

> This invention relates to a pneumatic truck tire having belt-edge reinforcement which prevents belt-edge separation..." (Exhibit 3).

In an earlier patent by Goodyear, its design includes a "pair of nylon overlays ... for reinforcement and to prevent tread separation" (Exhibit 4). Several Goodyear engineers have testified as to the effectiveness of nylon overlays in preventing tread separations (Exhibit 5).

18. Nylon overlays reduce the centrifugal forces on the tread-belt package where separations form. This stress occurs every time a tire is used. Centrifugal forces increase with speed and heavier belt packages, thus they are frequently used in higher speed tires and those with heavier belt packages such as light truck and traction tires. Every tire experiences centrifugal forces so nylon overlays benefit separation resistance in all tires.

19. It is my opinion that the subject tire was defective in design because Goodyear failed to design adequate separation countermeasures in this area by failing to use the technologically feasible, reasonable and economically feasible component known as nylon overlays. The subject tire was designed and

10

> manufactured and placed into the stream of commerce by
> Goodyear in the second week of January 2002. As set
> forth above, the nylon overlays were both
> technologically feasible, reasonable and economically
> feasible well before January 2002. As set forth above,
> Goodyear also used nylon overlays on tires before
> January 2002 to prevent tread separations.

Resp., App. at 20-21.

Boiled down to their essentials, the bases for Carlson's design defect theory are that since the 1960s certain tire manufacturers, including Goodyear, have designed a nylon overlay in certain types of tires they manufactured for certain classes of vehicles, that their reason for doing so was to reduce the frequency of tread separations on those types of tires used on those types of vehicles. He opines that, therefore, the design of the subject tire was defective because Goodyear failed to include in it a nylon overlay. A less scientific approach to arriving at a design defect opinion would be hard to imagine.

Kumho is not the only tire-failure case in which an "expert" opinion of Carlson has been found wanting. In Prapha-Phatana v. Cooper Tire & Rubber Co., No. 03-1089-PHX-ROX, 2006 WL 2683629, *4 (D. Ariz. Sept. 19, 2006), the court, in rejecting a "nylon overlay" contention, noted that the contention was not supported by expert testimony. The expert was Carlson. The Prapha-Phatana court noted that in his deposition Carlson "stated that the

11

absence of a nylon overlay is not necessarily a defect and that 90% of comparable tires do not have a nylon overlay." Id. In his deposition in the instant case, Carlson acknowledged that there was no methodology that would support his nylon overlay opinion. Mot, App. at 137.

Carlson's opinions are not supported by any references to scientifically reliable peer review literature, test results, or research. The court has not been provided information that would cause the court to believe that the opinions of Carlson, and the methods he used in arriving at those opinions, find general acceptance in the relevant scientific-technical community.

Plaintiffs simply have failed to provide the court probative evidence that Carlson's nylon overlay design defect theory is relevant to this particular case or is reliable. Therefore, the court is ruling that plaintiffs shall not offer evidence from Carlson in support of such a theory, and that plaintiffs' claim of a causative design defect because of absence of a nylon overlay is without merit.

IV.

ORDER

For the reasons given above,

The court ORDERS that plaintiffs' claims that Goodyear was guilty of malice and that plaintiffs are entitled to recover exemplary damages from Goodyear are without merit, and shall no longer be pursued in this action.

The court further ORDERS that defendant's motion as to the conscious pain and suffering issue be, and is hereby, denied.

The court further ORDERS that plaintiffs' claims that the tire in question had a design defect because of absence of a nylon overlay in the design and that the absence of such an overlay caused the accident in question are without merit, and that such claims shall no longer be pursued in this action.

SIGNED June 2, 2011.

JOHN McBRYDE
United States District Judge